## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

**DEBBIE SIERS-HILL,**

    **Petitioner**

                                  **CRIMINAL NO. 2:18cr62**
                                  **CIVIL NO. 2:20cv38**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

### MEMORANDUM OPINION

This matter comes before the Court on Debbie Siers-Hill's ("Petitioner") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). ECF No. 40. In her § 2255 Motion, Petitioner asks the Court to vacate her judgment of conviction and sentence on four grounds, all of which center on the assertion that her offense—Possession of an Unregistered Biological Agent or Toxin (Ricin)—was not in violation of law at the time of said possession.

As a broad overview of the matters addressed herein, the Court provides the following synopsis of the statute at issue: On April 18, 2018, Petitioner was named in a two-count criminal indictment, one count of which charged her with Possession of an Unregistered Biological Agent or Toxin (Ricin), in violation of 18 U.S.C. § 175b(c)(1). Title 18 U.S.C. § 175b(c)(1) states,

> Whoever knowingly possesses a biological agent or toxin where such agent or toxin is a select agent for which such person has not obtained a registration required by regulations under section 351A(c) of the Public Health Service Act shall be fined under this title, or imprisoned for not more than 5 years, or both.

18 U.S.C. § 175b(c)(1). Subsection (d) of § 175b defines the scope of such "select agents," explaining that "[t]he term 'select agent' means a biological agent or toxin to which subsection (a) applies." Id. § 175b(d)(1). Finally, turning to the language of § 175b's subsection (a) at the time

of Petitioner's indictment,

> No restricted person shall ship or transport in or affecting interstate or foreign commerce, or possess in or affecting interstate or foreign commerce, any biological agent or toxin, or receive any biological agent or toxin that has been shipped or transported in interstate or foreign commerce, if the biological agent or toxin is listed as a non-overlap or overlap select biological agent or toxin in sections 73.4 and 73.5 of title 42, Code of Federal Regulations, pursuant to section 351A of the Public Health Service Act, and is not excluded under sections 73.4 and 73.5 or exempted under section 73.6 of title 42, Code of Federal Regulations.

Id. § 175b(a)(1). The Court finds that the statute enumerated above—that was in effect at the time of Petitioner's offense and subsequent indictment—criminalized the unregistered possession of ricin. For the reasons set forth herein, Petitioner fails to state a cognizable claim for relief. Accordingly, the Court **DENIED** Petitioner's § 2255 Motion. ECF No. 40.

I.    **FACTUAL AND PROCEDURAL HISTORY**

A brief description of the material facts follows: In March and April of 2016, officers of the Virginia Beach Police Department searched Petitioner's storage unit located on Dam Neck Road in Virginia Beach. Presentence Investigation Report ("PSR"), ECF No. 34, ¶ 1. Said storage unit was held in Petitioner's name and paid for with her credit card. Id. In addition, Petitioner was the only one observed entering and departing the unit based on surveillance video of the area. Id. Officers recovered several items from the unit, including liquid chemicals, syringes, packages of castor plant seeds, and three firearms. Id. ¶ 2. One of the firearms was a Charter Arms .38 caliber revolver with an obliterated serial number. Id. In addition, one of the liquid chemicals was held in a container that had been wrapped in towels and double-wrapped in plastic bags, along with latex gloves. Id.

Chemical samples obtained from the storage unit were sent to a state laboratory for testing and were then sent for additional testing at federal laboratory in Maryland. Id. ¶ 3. The federal laboratory identified the substance held in the double-wrapped container to include ricin and also

determined that traces of ricin were on the syringes. Id. According to the Statement of Facts,

> Ricin is a highly dangerous toxin that occurs naturally in castor seeds. It can be derived from castor seeds using several methods, and there is no known antidote to ricin poisoning. Because it has been determined to have the potential to pose a severe health threat, ricin is listed as a "select agent" by the U.S. Department of Health and Human Services. Before they can possess ricin, individuals must comply with certain select agent registration requirements, including requirements under section 351A(c) of the Public Health Service Act.

Id. ¶ 4. Petitioner had not obtained the requisite registration to possess ricin. Id. ¶ 5. A forensic examination of Petitioner's phone revealed a web history of viewing articles titled, "Caffeine Powder Poses Deadly Risks"; "Why is Powdered Caffeine Dangerous?"; "Pure Caffeine Powder: What You Need to Know?"; and "Death by Caffeine Powder." Id. ¶ 7. According to case agents, powdered caffeine was also recovered from Petitioner's storage unit. Id.

On April 18, 2018, Petitioner was named in a two-count criminal indictment charging her with Possession of an Unregistered Biological Agent or Toxin (Ricin), in violation of 18 U.S.C. § 175b(c)(1) (Count One), and Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count Two). ECF No. 3. On September 18, 2018, Petitioner appeared before the Court and pled guilty to Count One pursuant to a written plea agreement with the Government. ECF No. 18. On January 14, 2019, this Court sentenced Petitioner to a term of thirty-five (35) months. ECF No. 32. Supervised release was set for a three-year term. Id. at 3.

On January 13, 2020, Petitioner filed her § 2255 Motion and accompanying Letter Motion to Proceed in Forma Pauperis. ECF Nos. 39, 40. On March 20, 2020, the Court ordered the Government to respond to Petitioner's § 2255 Motion within sixty (60) days from the date therein and denied Petitioner's Letter Motion to Proceed in Forma Pauperis as moot. ECF No. 43.

On May 5, 2020, Petitioner filed a Motion for Compassionate Release, ECF No. 48, and the Court established a briefing schedule for the same, thereby appointing the FPD to represent Petitioner in her compassionate release proceedings, ECF No. 49. However, citing a conflict of interests due to Petitioner's pending § 2255 Motion, the FPD filed a Motion to Withdraw on May 12, 2020. ECF No. 51.

By Order dated May 19, 2020, the Court advised the parties that the case of <u>United States v. Jordan</u>, No. 4:18-CR-163 JM, 2020 WL 1531367, at *1 (E.D. Ark. Mar. 30, 2020) had been brought to the Court's attention. ECF No. 52. In <u>Jordan</u>, the United States District Court for the Eastern District of Arkansas granted the defendant's Motion to Dismiss the Indictment—as the defendant had been indicted under the same statute applicable in the instant case, 18 U.S.C. § 175b—based on the contention that ricin was not listed in the Code of Federal Regulations ("C.F.R.") as a select agent at the time of his indictment. 2020 WL 1531367, at *2. Additionally, <u>Jordan</u> appended <u>United States v. Gibbs</u> thereto, in which the District Court for the Northern District of Georgia similarly concluded that an indictment under 18 U.S.C. § 175b could not proceed on the basis of unregistered possession of ricin. 2:17-cr-00005-RWS-JCF (N.D. Ga. Sept. 21, 2018) (Doc. No. 71).

Based on the persuasive reasoning contained therein that appeared to support Petitioner's request for relief in her § 2255 Motion, the Court appointed Mr. Jamison Rasberry as counsel for Petitioner. ECF No. 52. In addition, the Court set an expedited briefing schedule, thereby requiring the Government to respond within seven (7) days of the date therein. Moreover, the Court advised Petitioner that she could file a reply, if any, within seven (7) days after service of the response of the United States. <u>Id.</u> Finally, the Court took under advisement Petitioner's Motion for Compassionate Release and the FPD's Motion to Withdraw pending resolution of Petitioner's

§ 2255 Motion.  Id.

The Government filed its Response on May 26, 2020, ECF No. 55, and Petitioner filed her Reply on June 2, 2020, ECF No. 57.  The Court conducted an evidentiary hearing on Petitioner's § 2255 Motion on June 11, 2020.  At said hearing, Mr. Alan Salsbury and Mr. Andrew Bosse appeared on behalf of the Government, while Mr. Jamison Rasberry appeared on behalf of Petitioner.  Petitioner was also present at said hearing.  At said hearing, the Court heard argument from both Mr. Salsbury and Mr. Rasberry.  Although the Government subpoenaed Ms. Suzanne Katchmar, Petitioner's former defense counsel, to appear at the hearing, Ms. Katchmar did not testify, as her affidavit was not contested.  Petitioner did not testify at said hearing.

By Order dated June 11, 2020, the Court denied Petitioner's § 2255 Motion, while indicating that a memorandum opinion would subsequently be filed.  ECF No. 59.  This Memorandum Opinion sets forth the reasons for the Court's ruling.

## II.    LEGAL STANDARDS FOR § 2255 MOTIONS

### A.    GENERAL STANDARD OF REVIEW

Collateral review created by 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing Court lacked jurisdiction; (3) the sentence imposed was in excess of the maximum amount authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255.  On such grounds, the petitioner may move the court to vacate, set aside, or correct a sentence.  The Supreme Court has held that § 2255 is the appropriate vehicle by which a federal prisoner may challenge both a conviction and the post-conviction sentence.  Davis v. United States, 417 U.S. 333, 343–44 (1974).

A district court may dismiss a petitioner's § 2255 motion in several clearly defined circumstances. The statute provides that, "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney [and] grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255. Thus, as a corollary, a court may dismiss a § 2255 motion if it is clearly inadequate on its face and if the petitioner would not be entitled to relief assuming the facts alleged in the motion are true. If the motion when viewed against the record shows that the petitioner is entitled to no relief, the court may summarily deny the motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

When filing a § 2255 petition to vacate, set aside, or correct a sentence, a petitioner "bears the burden of proving his grounds for collateral attack by a preponderance of the evidence." Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998) (citing Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). A motion under § 2255 may not "do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

Any matter that could have been asserted either at trial or on appeal but was not so asserted is not appropriate for review on motion under § 2255—thereby subjecting it to procedural default—unless there is a showing of "cause" sufficient to excuse the procedural default and of "actual prejudice" resulting from the error. Thus, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (quoting Murray v. Carrier, 477 U.S. 478, 485, 496 (1986)); see also United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999).

6

"The existence of cause for procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Mikalajunas, 186 F.3d at 493; see also McCleskey v. Zant, 499 U.S. 467, 493–94 (1991). Moreover, when a movant has knowingly and voluntarily pled guilty and waived his right to appeal, he cannot demonstrate cause sufficient to warrant habeas review. United States v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990) (a knowing and voluntary plea agreement in which the petitioner expressly waives his right to appeal is valid and enforceable).

A showing of "actual prejudice" requires a petitioner to establish that the error had a "substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)). Thus, showing actual prejudice requires a petitioner to show that the errors not only created the possibility of prejudice but that they worked to his actual and substantial disadvantage. Frady, 456 U.S. at 170.

However, a showing of cause and prejudice is not required if the movant seeks relief based on a constitutional violation that may have resulted in a fundamental miscarriage of justice, McCleskey, 499 U.S. at 494; or the movant raises certain constitutional claims that may be adequately addressed only on collateral review, such as ineffective assistance of counsel, Massaro v. United States, 538 U.S. 500, 509 (2003); see also Mikalajunas, 186 F.3d at 493. Finally, a petitioner must establish actual innocence by clear and convincing evidence. Id.

**B.    SECTION 2255 CLAIMS FOLLOWING GUILTY PLEAS**

As considerations of finality carry "special force with respect to convictions based on guilty pleas," a guilty plea may be attacked on collateral review only in "strictly limited" circumstances. Bousley, 523 U.S. at 621 (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). Thus, a "voluntary and intelligent plea of guilty" made by one "who has been advised by competent

counsel . . . may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984).

A petitioner who has pleaded guilty may file a § 2255 motion to raise a claim that his plea was not voluntary and intelligent. Bousley, 523 U.S. at 618–19. Bousley held that where a petitioner had been misinformed as to the elements of the offense against him, the guilty plea was unintelligent and therefore "constitutionally invalid." Id. A petitioner may also raise a claim pursuant to a § 2255 motion that he or she received ineffective assistance of counsel prior to entering a plea.

As a guilty plea is an admission of all the elements of the charges in the indictment, United States v. Broce, 488 U.S. 563, 569 (1989), a petitioner typically may not collaterally attack the plea on the grounds of insufficient evidence to prove an element of the offense. Thus, a claim that the evidence was insufficient to prove an element cannot be raised on collateral review, but a claim that the petitioner was misinformed about the elements of the offense at the plea hearing may be raised under Bousley.

### C.   INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD OF REVIEW

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). A petitioner's failure to satisfy either prong of the Strickland test renders it unnecessary for a reviewing court to consider the other element. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

The first prong requires that the petitioner show that counsel's performance fell below an objective standard of reasonableness. To show that defense counsel's performance was objectively unreasonable, the petitioner must articulate specific acts or omissions whereby counsel's performance fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. When reviewing the propriety of these alleged acts or omissions, courts must give

substantial deference to defense counsel's strategic judgments. Id. at 689–90.

The second prong requires that the petitioner demonstrate that he was prejudiced by counsel's deficient performance, in that it is "reasonably likely" that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Harrington v. Richter, 562 U.S. 86, 111–12 (2011) (citing Strickland, 466 U.S. at 696). "The likelihood of a different result must be substantial, not just conceivable." Id. (citing Strickland, 466 U.S. at 693). The burden is on the petitioner to affirmatively prove prejudice. Strickland, 466 U.S. at 693. When applying this test to the guilty plea process, the Supreme Court has held that, to show prejudice, the Petitioner "must show that there is a reasonable probability that, but for counsel's errors, [the Petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

## III.    PETITIONER'S § 2255 MOTION

In her § 2255 Motion, Petitioner alleges four grounds for relief, including that (1) her sentence was imposed in violation of the law; (2) the Court was without authority to impose a sentence; (3) her guilty plea was not knowing and voluntary because it was effectuated on the advice of defense counsel, who had not researched the statute under which Petitioner was convicted; and (4) defense counsel failed to research the statute under which Petitioner was convicted. See ECF No. 40. All four of Petitioner's grounds for relief are intertwined, centering on the primary contention that ricin was not a "select agent" at the time of the offense and therefore Petitioner's possession thereof was not in violation of 18 U.S.C. § 175b(c)(1). Id. at 7.

The Court will first address Petitioner's underlying assertion that her sentence was imposed in violation of the law. In so doing, the Court will duly address Petitioner's jurisdictional claim, in which she asserts the Court was without authority to impose a sentence. Next, the Court will address Petitioner's two remaining claims, which find their nexus in ineffective assistance of

counsel.  For the reasons discussed below, the Court finds that ricin was listed as a select agent at the time of Petitioner's offense, and therefore Petitioner's possession thereof was in violation of 18 U.S.C. § 175b(c)(1).  Accordingly, Petitioner's § 2255 Motion, which hinges on a finding to the contrary, must be denied.

### A.   UNREGISTERED POSSESSION OF RICIN

At the heart of Petitioner's argument, she contends that the sentence imposed in her case was in violation of the law, as unregistered possession of ricin was not a crime at the time of her indictment.  ECF No. 40 at 7.  Next, Petitioner expands her ricin argument into jurisdictional territory, contending that the Court was without authority to impose a sentence.  Id. at 8.  In essence then, Petitioner attacks her indictment as defective, asserting that she was never charged with an actual crime considering the classification of ricin at the time of her indictment.  Id.  The Court finds Petitioner's position unpersuasive.

#### 1.   Applicable Law

The Court's analysis must begin with the language of the statute.  In construing a statute, the Court applies the plain meaning of the statutory language, unless there is a clearly expressed legislative intent to the contrary, or "when a literal application would frustrate the statute's purpose or lead to an absurd result."  Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 288 (4th Cir. 1998).  Where the statutory language has a plain meaning, the Court's inquiry is complete, and it will enforce the statute as written.  Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 137, 140 (4th Cir. 2009).  A statute's plain meaning is defined by the statutory language's common and ordinary meaning, absent an indication from Congress that the language should have a different meaning, id. at 137, and by both the specific context in which the language is used and in the broader context of the statute as a whole, Robinson v. Shell Oil Co.,

10

519 U.S. 337, 341 (1997).  Alternatively, where statutory language is ambiguous, and thus lacking a plain meaning, the Court will look to a statute's legislative history to determine the intent of Congress.  See, e.g., Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th Cir. 1996).

Here, § 175b(c) prohibits "knowingly possess[ing] a biological agent or toxin where such agent or toxin is a select agent for which such person has not obtained a registration required by regulations under section 351A(c) of the Public Health Service Act . . . ."  18 U.S.C. § 175b(c)(1). A "select agent" is one "to which subsection (a) applies."  Id. § 175b(d)(1).  At the time of Petitioner's indictment on April 18, 2018, subsection (a) of § 175b applied "if the biological agent or toxin is listed . . . in sections 73.4 and 73.5 of title 42" of the C.F.R.  Id. § 175b(a)(1).  42 C.F.R. § 73.4 includes a list of overlap[1] select agents and toxins that the Department of Health and Human Services ("HHS") has determined pose potential threats to public health and safety, while 42 C.F.R. § 73.5 contains exemptions thereto.  Significantly, neither 42 C.F.R. § 73.4 nor § 73.5 mention ricin.

On July 25, 2019, Congress acknowledged the exclusion of ricin from the select agent list as "a scrivener's error" or "drafting error," and amended § 175b(a) to correct the same.  Effective Prosecution of Possession of Biological Toxins and Agents Act of 2019, Pub L. 116-31, 133 Stat. 1034 (2019); see also 165 Cong. Rec. H5331-01 (describing the same as a "drafting error"). Accordingly, the amendment replaced the reference to agents listed in sections 73.4 and 73.5 of Title 42 of the C.F.R., which did not include ricin, to more broadly include select biological agents or toxins under all of part 73 of Title 42 of the C.F.R.  Ricin is indeed listed as a select agent and toxin under 42 C.F.R. § 73.3(b).

---

[1] For reference, select agents and toxins that are regulated by both HHS and the Department of Agriculture are known as "overlap agents," while select agents and toxins that HHS alone regulates are referred to as "non-overlap agents."

## 2.  Discussion

In her § 2255 Motion, Petitioner contends that she pleaded guilty to a charge that was not a criminal offense, as "18 U.S.C. 175b(c)(1) nor Public Health Service Act 351A(c) list ricin as a 'select agent.'" ECF No. 40 at 4. Because these laws "plainly exclude[]" ricin, Petitioner asserts that her possession thereof was "not a crime nor has it been for many years." Id. at 5. Given the complexity of this statutory matter, the Court will briefly recount the arguments of the Government and Petitioner, respectively.

### a.  The Government's Response

In response to Petitioner's argument, the Government presents three primary arguments: (1) the legislative history shows that Congress has always included ricin in its definition of restricted select agents; (2) Petitioner's argument would lead to an absurd result; and (3) where Congress's intent is clear, courts have rejected similar arguments premised on analogous scrivener's errors and cross-reference discrepancies. ECF No. 55 at 10.

First, the Government relies on legislative history, contending that Congress has always included ricin in its definition of restricted select agents. Id. at 13. In December of 2004, the Government explains that Congress modified § 175b based on HHS's amendment of its list of select agents and toxins regulated by the C.F.R.:

> [A]s HHS changed the Part of Title 42 of the C.F.R. that held its list of regulated select agents from Part 72 to Part 73, Congress tracked that change in § 175b, referring to the specific new subparts in HHS's amended interim final rule listing non-overlap and overlap select agents, i.e., 42 C.F.R. §§ 73.4 (HHS non-overlap select agents, the list that includes ricin) and 73.5 (overlap select agents, the group also regulated by USDA)—thus leaving no doubt about its intent to continue to restrict the unregistered possession of ricin and other HHS select agents, which, again, is the reason for the law in the first place.

Id. at 14. However, when HHS finalized the amended list of select agents and toxins, it had renumbered the sections, and Congress's changes to § 175b did not track said renumbering.

Accordingly, Congress's ultimate modification to § 175b contained a cross-reference to the C.F.R. sections that did not reference ricin. Id. at 15. As such, the Government argues that the lack of reference to ricin in § 175b was due to HHS's renumbering of the C.F.R. sections, not due to Congressional intent. Id. at 16.

Next, the Government avers that siding with Petitioner would lead to an absurd result, as HHS's decision to renumber its list of select agents would in turn mean that the statute allowed anyone to possess ricin and other agents, such as "ebola, the reconstituted 1918 pandemic influenza strain, the SARS coronavirus, various neurotoxins, Marburg virus, monkeypox, smallpox, and a variety of South American hemorrhagic fever viruses." Id. at 17. Accordingly, Petitioner's interpretation runs contrary to the very meaning of § 175b.

Moreover, the Government states that § 175b is ambiguous because § 175b applied "if the biological agent or toxin is listed as a *non-overlap or overlap* select biological agent or toxin in sections 73.4 and 73.5 of title 42" of the C.F.R. 18 U.S.C. § 175b(a)(1) (emphasis added). 42 C.F.R. § 73.4 includes a list of *overlap* select agents and toxins, while 42 C.F.R. § 73.5 contains exemptions thereto. So, while the cross-references refer to *overlap* select agents and their exceptions, noticeably absent is any cross-references to *non-overlap* agents. The Government contends then that such a discrepancy creates an ambiguity in the reading of the statute. Id. at 18. Due to such ambiguity, the Government asserts that the Court can assess the legislative history behind the statute instead of relying on a plain reading thereof. Id. at 19.

Based on this alleged ambiguity and absurdity, the Government lastly argues that courts have rejected arguments similar to Petitioner's that are premised on analogous scrivener's errors and cross-reference discrepancies. Id. at 20. For instance, the Government highlights United States v. Bhutani, 266 F.3d 661 (7th Cir. 2001). In amending the Food, Drug, and Cosmetic Act

in 1984, Congress moved the provision containing certain record-keeping requirements from 21 U.S.C. § 355(j) to § 355(k).  Id. at 665.  The associated criminal penalty, 21 U.S.C. § 331(e), still referenced the failure to maintain records under § 355(j).  Id.  The cross-reference error was corrected in 1990; the question for the Seventh Circuit was whether a criminal conviction from the six-year interim during which the criminal statute cross-referenced the incorrect subsection could stand.  The Seventh Circuit, after a thorough analysis of the question, held that it could, explaining that "strictly reading and applying the FDCA as it was at the time of the offense in question would put the plain language at odds with the statute's purpose and intent," and noting that there was "no indication in the legislative history that in amending the [statute] Congress intended to eliminate the penalties."  Id. at 667.  Accordingly, the Government argues,

> The same is true here: Congress, when it passed the version of § 175b in effect at the time Petitioner possessed the ricin, referenced the C.F.R. provisions containing the list of non-overlap and overlap select agents the statute explicitly was intended to cover—i.e., 42 C.F.R. §§ 73.4 and 73.5.  HHS's decision to renumber those C.F.R. provisions was a "subsequent . . . modification" of a kind that did not change the meaning of the statute.

ECF No. 55 at 22.  Ultimately then, the Government concludes that Petitioner's position is untenable and her § 2255 Motion should be denied.

b.   Petitioner's Reply

In Petitioner's Reply, she focuses primarily on rebutting the Government's statutory interpretation of § 175b.  As a threshold matter, Petitioner emphasizes that the cross-references contained in § 175(b) at the time of her indictment exhibited no reference to ricin.  ECF No. 57. While the Government relies on legislative history to support its assertions regarding Congress's intent and touts that a plain reading of the statute would lead to an absurd result, Petitioner points to the rules of statutory interpretation, indicating that legislative history need not be assessed where the statutory language is unambiguous.  Id. at 5.  Specifically, "Where a reading of the statute

14

produces a clear and logical result that reading should be applied by the interpreting court without further review." Id. at 7.

In support thereof, Petitioner cites United States v. Haney, 814 F.2d 905, 917 (4th Cir. 1987), which states, "Even where the results appear anomalous or unintended in a particular case, courts are not free to disregard the plain language of the statute itself." Id. Accordingly, rather than siding with the Government and ignoring the plain and clear language of the statute at hand, Petitioner urges the Court to follow the explicit direction of the statute, which she claims simply did not criminalize the possession of ricin at the time of Petitioner's indictment. Id.

Moreover, relying on United States v. Jordan and United States v. Gibbs, where the district courts dismissed indictments against the respective defendants for the statute's claimed failure to reference ricin, Petitioner encourages the Court to avoid "looking for a way to produce a certain result but instead to faithfully apply the law as written." Id. at 8. Lastly, Petitioner cites the rule of lenity, asserting that any statutory ambiguity should be resolved in favor of Petitioner. Id. at 10. As such, Petitioner requests that the Court grant her § 2255 Motion.

        c.    Analysis

The Court finds that § 175b criminalized the unregistered possession of ricin in Petitioner's case. Upon extensively assessing the legislative history associated with this statute, it is abundantly clear that Congress has always intended to criminalize such unregistered possession, but that this clarity has been wrongly called into question by HHS's eleventh-hour action of renumbering portions of the C.F.R. Critical to this conclusion is an understanding of HHS's proposed interim final rule from December of 2002; the Congressional amendment of § 175b in December of 2004; and HHS's subsequent reformatting of relevant subsections in the C.F.R. in

March of 2005.

Turning first to HHS's proposed interim final rule from December of 2002, HHS published said rule in the Federal Register, indicating therein:

> This document establishes requirements regarding possession and use in the United States, receipt from outside the United States, and transfer within the United States, of certain biological agents and toxins (referred to below as select agents and toxins). This includes requirements concerning registration, security risk assessments, safety plans, security plans, emergency response plans, training, transfers, record keeping, inspections, and notifications. The Act requires an interim final rule and mandates its effective date and transition provisions. The new regulations are set forth in a new 42 CFR part 73 (referred to below as the part 73 regulations).

Possession, Use, and Transfer of Select Agents and Toxins, 67 Fed. Reg. 76886-01 (Dec. 13, 2002). Reviewing this interim final rule further reveals that ricin was listed in 42 C.F.R. § 73.4, which was titled "HHS select agents and toxins." Id. Congress took note of this listing when it amended § 175b in December of 2004, therein explicitly cross-referencing said subsection of the C.F.R. and thereby criminalizing unregistered possession of ricin. See Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108–458, 118 Stat. 3638 (2004). Accordingly, subsection (a) of § 175b described select agents as those "listed . . . in sections 73.4 and 73.5 of title 42" of the C.F.R. Id. § 175b(a)(1).

Only after the fact of this Congressional amendment in December of 2004 did HHS publish its final rule in March of 2005, which changed the "structure and format of the HHS regulations." Possession, Use, and Transfer of Select Agents and Toxins, 70 Fed. Reg. 13294-01 (Mar. 18, 2005). Unlike the interim final rule discussed above, which listed ricin in 42 C.F.R. § 73.4 and was relied upon in the December 2004 Congressional amendment of § 175b, the final rule switched said classification, moving ricin—and the list of HHS select agents and toxins—to 42 C.F.R. § 73.3. Id. As the Government aptly notes, "In other words, several months after Congress had

16

amended § 175b to cross-reference the subpart numbers in HHS's amended interim final rules, HHS shifted its numbering scheme by .1." ECF No. 55 at 15.

The mere fact that HHS, a federal agency, renumbered the subsection of the C.F.R. referring to ricin *after* Congress had relied on HHS's representation of said subsections in amending § 175b can have no substantive impact on the statute. In other words, HHS had no authority to alter the substantive nature of § 175b or its meaning, as Congress's amendment in December of 2004 made explicitly clear that it intended to continue criminalization of unregistered possession of ricin. To hold otherwise—finding that § 175b did not criminalize the unregistered possession of ricin—would trample the specific intent of Congress and grant improper authority to HHS, as HHS's renumbering would effectively lead to criminal penalties for possession of certain select agents and not others. See generally Encarnacion ex rel. George v. Barnhart, 331 F.3d 78, 86 (2d Cir. 2003) (in the context of an agency's interpretation of its regulation, "[I]t would make no sense to presume that Congress had the general intent to delegate to an agency the power to contradict Congress's clearly expressed specific intent in some other matter . . . .").

Accordingly, "'Congress has supplied a clear and unambiguous answer to the interpretive question at hand'. . . and an inconsistent agency regulation cannot displace Congress' intent." United States v. Erazo-Diaz, 353 F. Supp. 3d 867, 872 (D. Ariz. 2018) (quoting Pereira v. Sessions, 138 S. Ct. 2105, 2113–14 (2018)); see also United States v. Haggar Apparel Co., 526 U.S. 380, 392 (1999) ("In the process of considering a regulation in relation to specific factual situations, a court may conclude the regulation is inconsistent with the statutory language or is an unreasonable implementation of it. In those instances, the regulation will not control."). As such, Petitioner's claim that she was sentenced in violation of the law is meritless, as § 175b criminalized the

unregistered possession of ricin in Petitioner's case.

This conclusion is duly true as to Petitioner's second claim regarding the Court lacking authority or jurisdiction with which to proceed against her.  ECF No. 40 at 8.  Such jurisdiction that Petitioner alludes to "defines the court's authority to hear a given type of case," and "Congress [has] bestow[ed] that authority on lower courts by statute."  Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000); Courtade v. United States, No. 2:15CR29, 2017 WL 6397105, at *13 (E.D. Va. Dec. 13, 2017).  For federal crimes, Congress did so in 18 U.S.C. § 3231, providing district courts with "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  18 U.S.C. § 3231.  Based on the discussion above, Petitioner's offense was one against the "laws of the United States."  The indictment charged Petitioner with violating 18 U.S.C. § 175b, a valid federal statute in the United States Code.  As such, § 3231 empowered the Court with jurisdiction to act over Petitioner's indictment.  United States v. Brown, 752 F.3d 1344, 1353 (11th Cir. 2014).  As such, Petitioner's first two claims must fail.

The Court is cognizant of the fact that this conclusion runs contrary to the outcomes in both United States v. Jordan, No. 4:18-CR-163 JM, 2020 WL 1531367 (E.D. Ark. Mar. 30, 2020) and United States v. Gibbs, 2:17-cr-00005-RWS-JCF (N.D. Ga. Sept. 21, 2018) (Doc. No. 71).  The Court also recognizes that the argument discussed above was not addressed in Jordan or Gibbs.  In arriving at their joint conclusion that § 175b could not be read to criminalize unregistered possession of ricin, the Courts in Jordan and Gibbs appeared to rely on reading the statute plainly— thereby ignoring that the change of the regulation could not truly alter the statute at issue—and the supposed existence of unclear Congressional intent.  However, this Court is persuaded that the instant case requires application of the plain meaning of the statutory language, *unless* there is

18

clearly expressed legislative intent to the contrary. <u>Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen</u>, 152 F.3d 283, 288 (4th Cir. 1998) (emphasis added).

Here, there is clearly expressed legislative intent contrary to a plain reading of the statute. Indeed, there was legislative action to the contrary. Specifically, unlike the reasoning advanced in <u>Jordan</u> and <u>Gibbs</u>, there can be no lack of clarity in regard to Congressional intent where Congress explicitly tracked HHS's changes in the C.F.R. when amending § 175b in December of 2004 so as to criminalize unregistered possession of ricin. Thus, the Court is bound by this clearly expressed legislative intent and must hold accordingly, thereby declining to give substantive effect to the agency's renumbering in March of 2005.

### B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Petitioner argues in her remaining two claims that her defense counsel rendered ineffective assistance of counsel for failing to research § 175b, which led to Petitioner submitting a plea of guilty that was not knowing and voluntary. ECF No. 40 at 4–5. More specifically, Petitioner argues that her attorney failed to advise that Petitioner's possession of ricin did not support a conviction under § 175b. <u>Id.</u> According to Petitioner, had her attorney taken the time to research Petitioner's case and the cross-references contained in § 175b, the attorney would have realized that ricin was not labeled as a "select agent," and Petitioner would not have pleaded guilty. <u>Id.</u>

The record is sufficient for the Court to conclude that Petitioner did not receive constitutionally ineffective assistance of counsel. For instance, the record itself rebuts Petitioner's contention that her counsel failed to inform Petitioner that her possession of ricin did not support a conviction under § 175b. In fact, Petitioner was well-aware of the impact of <u>United States v. Gibbs</u>—within which the District Court for the Northern District of Georgia concluded that an

indictment under 18 U.S.C. § 175b could not proceed on the basis of unregistered possession of ricin—as counsel advised her of the same. 2:17-cr-00005-RWS-JCF (N.D. Ga. Sept. 21, 2018) (Doc. No. 71). According to the unrebutted submission of Ms. Katchmar's affidavit and letters,[2] Ms. Katchmar advised Petitioner of Gibbs on November 2, 2018, discussing the possibility of attempting to withdraw Petitioner's plea and the potential consequences thereof. ECF No. 55-1 at 1. At the time, Ms. Katchmar indicated that Petitioner was "leaning toward keeping matters as status quo." Id.

Ultimately, Petitioner "confirmed that [she] wished to keep [her] plea in place due to the potential negative consequences that could occur related to allegations of financial crimes/improprieties that the Government had agreed not to pursue in the written plea agreement." Id. Again, on November 19, 2018, Petitioner "confirmed [her] wish to maintain [her] guilty plea." Id. Based on the following, Petitioner was kept abreast of the developments in her case, including the possibility that Petitioner's possession of ricin did not support a conviction under § 175b based on Gibbs. Petitioner herself then determined that she desired to maintain the "status quo" and not pursue a motion to withdraw her guilty plea. Given the fact that Ms. Katchmar's performance was sufficient with regard to her research and interpretation of § 175b, Petitioner's claim that her plea was not knowing and voluntary must fail as it was premised on that basis alone.

As for the prejudice prong of the Strickland test, a defendant who claims that he received ineffective assistance of counsel in entering a guilty plea must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Such a showing "depend[s] largely on whether [he] likely would have succeeded at trial." See Hill, 474 U.S. at

[2] Notably, at the hearing on June 11, 2020, Mr. Rasberry advised the Court that Petitioner did not wish to contest the contents of Ms. Katchmar's affidavit or appended letters.

59. Here, Petitioner has made no more than the bare formulaic assertion that, but for her counsel's advice, she would not have pleaded guilty. However, this claim is not credible given the extent of the charges that Petitioner avoided by not going to trial and the absence of any offered reason why she might have been confident of an acquittal.

Indeed, Petitioner benefited from her guilty plea by avoiding prosecution for "conduct related to access device information, identity card information, or other documents and data recovered pursuant to search warrants executed during the investigation of this case." ECF No. 18 at ¶ 8. In addition, the Government agreed to move to dismiss the remaining count of the indictment against Petitioner (i.e., Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B)). Id. ¶ 9. Therefore, Petitioner's remaining claims centering on ineffective assistance of counsel fail to allege any deficient performance or resulting prejudice as required to state an ineffective assistance of counsel claim under Strickland. Accordingly, Petitioner's ineffective assistance of counsel claims are without merit and must be denied.

### C.   ANALYSIS IN THE ALTERNATIVE

As the Court emphasized at the June 11, 2020 hearing, the underlying statutory interpretation in this case presents a complex inquiry. Indeed, reasonable jurists could differ on the issues resolved by this Court's Order. Accordingly, the Court finds analysis in the alternative necessary to complete its inquiry. In such a scenario then, the Court assumes arguendo that Petitioner pleaded guilty to that which was not a crime. However, even if this Court were to conclude that § 175b could not be read to criminalize the unregistered possession of ricin in Petitioner's case, Petitioner's § 2255 Motion would fail nonetheless due to procedural default.

Although the Government would have improperly relied upon Petitioner's unregistered possession of ricin to support her conviction under § 175b, Petitioner failed to present this issue at any time during the proceedings conducted before the Court. In addition, she filed no appeal. Accordingly, such claim would be procedurally defaulted. Frady, 456 U.S. at 167–68. Although procedural default may be overcome by demonstrating "cause" and "prejudice," id., here, Petitioner would fail to demonstrate either cause for failing to litigate such claim on appeal or resulting prejudice. Petitioner likewise would fail to demonstrate that a "miscarriage of justice would result from the refusal of the court to entertain" the instant claim. Mikalajunas, 186 F.3d at 494; White v. United States, No. 4:11CR11, 2014 WL 2002249, at *7 (E.D. Va. May 13, 2014).

Fundamentally, Petitioner's counsel never raised the issue of the hypothetical invalidity of the § 175b charge during the plea proceedings or at sentencing, and Petitioner did not appeal the § 175b conviction. When an attorney allows a defendant to plead guilty to a charge that is not a crime, the Court will have critical questions as to the constitutional sufficiency of said attorney's performance. Despite this, in a case where the defendant is charged with more than one offense, the Court must engage an analysis that considers the resolution of all charges against the defendant. "The conduct of an attorney who allows a defendant to plead guilty to a charge that is not a crime will be deemed constitutionally deficient on collateral attack only if, upon consideration of all of the charges against the defendant, the conduct prejudiced the defendant." United States v. Fowler, No. 95-1207, 1996 WL 734637, at *5 (10th Cir. Dec. 23, 1996) (unpublished). Thus, as to the procedural default inquiry, the disposition of the "cause" factor depends upon the disposition of the "prejudice" factor.

### 1. Cause/Prejudice

Here, the substantial benefit that Petitioner derived from pleading guilty to the § 175b offense would preclude a determination that any prejudice resulted from her choice to plead guilty to an offense that was not a crime. Indeed, "if a defendant substantially benefited from a plea bargain that he entered into voluntarily and intelligently, even if he pleaded guilty to a charge that was not a crime, he is not permitted to collaterally attack that conviction." Id.

Petitioner benefited from her guilty plea by avoiding prosecution for "conduct related to access device information, identity card information, or other documents and data recovered pursuant to search warrants executed during the investigation of this case." ECF No. 18 at ¶ 8. In addition, the Government agreed to move to dismiss the remaining count of the indictment against Petitioner (i.e., Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B)). Id. ¶ 9. In such circumstances, "since the defendant . . . used the plea as a tool for avoiding a more serious conviction . . . it would be the height of sophistry to vacate the defendant's plea of guilty." Fowler, 1996 WL 734637, at *5 (internal citations and quotations omitted). Accordingly, no prejudice resulted from Petitioner's failure to raise this issue previously and said claim would have been procedurally barred on collateral review.

### 2. Fundamental Miscarriage of Justice

Similarly, Petitioner would fail to demonstrate that a "miscarriage of justice would result from the refusal of the court to entertain" the instant claim. Mikalajunas, 186 F.3d at 494. In deciding whether this narrow exception applies, the "prototypical example" is the case in which "the State has convicted the wrong person of the crime" such that "it is evident that the law has made a mistake." Sawyer v. Whitley, 505 U.S. 333, 339–41 (1992). Use of this exception is "rare"

and limited to the "extraordinary case." See Schlup v. Delo, 513 U.S. 298, 321 (1995).

In light of the extreme limitations on its appropriate utilization, Petitioner's predicament simply would not fit the description thereof.  As discussed above, Petitioner's guilty plea to the § 175b count appears to have been a tactical decision to avoid prosecution for the financial crimes that Petitioner knew the Federal Bureau of Investigation was investigating and to have the firearm charge dismissed.  In addition, after benefiting from her plea in the above-enumerated ways, Petitioner then failed to take a direct appeal, which was likely a prudent strategic decision.  If, for instance, Petitioner had appealed her § 175b conviction and succeeded, the appropriate remedy likely would have been to vacate the entire plea agreement and remand for a new trial, a result that likely would have been to Petitioner's disadvantage.  Petitioner now asks the Court on collateral review to vacate her conviction as to which she has admitted guilt, from which she has gained a favorable plea bargain, and which she declined to challenge on direct appeal.  Only a "hypertechnical construction" could lead the Court to conclude that the facts of this case constitute a fundamental miscarriage of justice.  Fowler, 1996 WL 734637, at *6.  Accordingly, the Court would decline to hold the same, thereby denying Petitioner's § 2255 Motion under this alternative reading of the statute.

## IV.    CONCLUSION

For the reasons set forth above, the Court **FOUND** that Petitioner's § 2255 Motion, along with the files and the records of the instant case, show that Petitioner was not entitled to relief under 18 U.S.C. § 2255.  Accordingly, Petitioner's § 2255 Motion was **DENIED**.  ECF No. 40.

Petitioner is **ADVISED** that she may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within

24

60 days from the date of this Order.  Furthermore, because reasonable jurists could differ on the issues resolved by this Court's Order, the Court **GRANTS** a certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

The Clerk is **DIRECTED** to forward a copy of this Order to the Petitioner and to all Counsel of Record, including Ms. Suzanne Katchmar.

**IT IS SO ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
June 15, 2020

25